UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

COLLIN TRELLY,

                            Plaintiff,

-vs-

DEPUTY SHERIFF GEIGER,

                            Defendant.

DECISION AND ORDER

13-CV-6248  CJS

_____

INTRODUCTION

Collin Trelly ("Plaintiff"), who was formerly incarcerated in the Monroe County Jail ("the Jail"), alleges that Deputy Sheriff Geiger ("Defendant" or "Geiger"), while employed as a corrections officer at the Jail, violated his Eighth Amendment right to be free from cruel and unusual punishment. Now before the Court is Geiger's motion for summary judgment. (Docket No. [#31]). The application is granted.

BACKGROUND

Plaintiff's Complaint in this action alleges that Geiger violated his Eighth Amendment rights in the following manner:

> That on or about the 20th day of September, 2011, in the County of Monroe . . . Plaintiff was an inmate at the Monroe County Jail and Defendant, Deputy Geiger[,] was employed as a guard at the Monroe County Jail. That at said time and place, Defendant Geiger, through verbal threats and abuse and the physical action of approaching the Plaintiff, placed the Plaintiff in fear of imminent forceful, harmful contact[.]
> ***
> That [at the same time and place,] Defendant Geiger intentionally and wrongfully held Claimant down on his bed; placed his hand around Plaintiff's neck choking the Plaintiff and cutting off his air supply all without the Plaintiff's consent.
> ***

1

> That Defendant Deputy Geiger while acting under the color of state law . . . deprived the Plaintiff of . . . his right to be free from cruel and unusual punishment[.]

Complaint ¶ ¶ 7, 8, 13.

Generally, the facts viewed in the light most-favorable to Plaintiff, are as follows. On September 20, 2011, Plaintiff was assigned a cell in the Monroe County Jail, and Geiger, in his capacity as Jail Deputy, was assigned to work in Plaintiff's housing unit. At approximately 10:30 p.m. on that date, Plaintiff was locked into his cell for the night, and had partially covered his cell's light with a piece of paper, because he felt that the light was too bright. While performing his rounds, Deputy Geiger told Plaintiff to remove the paper from the light. Plaintiff indicated that he would comply with the demand, but then fell asleep before removing the obstruction. Later, at approximately 11 p.m., Geiger returned, and observed that the paper was still covering Plaintiff's cell light. Once again, Geiger ordered Plaintiff to remove the paper. Plaintiff indicates that Geiger kicked his cell door, then screamed and swore at him. Plaintiff responded that he "didn't understand what the big deal was, but [he nevertheless] got up and took the cardboard down [from the light]."[1] Plaintiff maintains that Geiger continued to yell at him, whereupon Plaintiff "called [Geiger] a cocksucker."[2] According to Plaintiff, Geiger then angrily entered the cell, approached him as he sitting up in the bunk, grabbed his throat with one hand and pushed him down onto the bed, and yelled profanities and threats at him, before exiting the cell.

The day after the incident, Plaintiff filed a written complaint against Geiger. In

---

[1] Trelly Aff. at ¶ 4.

[2] Trelly Aff. at ¶ 4.

2

connection with the investigation of Plaintiff's complaint, on September 22, 2011, Lieutenant DiMartino drafted a report detailing his investigation into Plaintiff's allegations. In pertinent part, DiMartino wrote: "I asked inmate Trelly how hard Deputy Geiger had choked him. He responded that it was hard enough that he had trouble breathing and could not speak."[3]

On July 13, 2012, Plaintiff testified at an examination pursuant to New York General Municipal Law § 50-h, whereupon he described the incident inside the cell in pertinent part as follows:

> As I was lying back down, he opened up the cell and then stormed in and shit, and he was yelling like pretty much just names and shit. He was like, "You need to get some respect. I don't know who the fuck you think you are." He said, "You're nothing," and then grabbed me by the neck as I'm lying down, pushes me down until it hits my face and continued screaming. . . . [He was yelling and screaming that] I need to learn my place and so as I'm told and that I'm a piece of shit, a faggot and – I don't know. I guess he was expecting something more out of me, but I just laid there, so he kind of gave up.

Docket No. [#31-2] at p. 17(Transcript p. 20). Later during that examination, Plaintiff testified concerning his injuries, as follows:

> Q. Did you have any marks, bruises, abrasions, cuts or anything else as a result of that?
> A. After the incident was done, yeah, for – maybe a day at most.
> Q. What did you have?
> A. Just like red, kind of like light bruises. That was it.
> Q. Where?
> A. On the neck.

---

[3] Docket No. [#33-5] at p. 8.

> Q. Which side of your neck?
>
> A. It was – I guess if it was with his right hand, then the left side.
>
> Q. And they lasted about a day?
>
> A. At the most, yeah.
>
> Q. Did you ask for any medical treatment after this incident occurred?
>
> A. I didn't ask for medical treatment, no.

Docket No. [#31-2] at 19.

On December 19, 2012, Plaintiff commenced this action, in New York State Supreme Court, Monroe County, against Monroe County, the Monroe County Sheriff, and Deputy Geiger. On May 15, 2013, Defendants removed the action to this Court.

On or about May 8, 2013, Defendants filed an Answer to the Complaint. The Answer includes fifteen separate affirmative defenses. (Docket No. [#1] at pp. 15-20). None of those affirmative defenses pertained to 42 U.S.C. § 1997e(a), which requires inmates of jails and prisons to exhaust their administrative remedies before commencing any action under federal law "with respect to prison conditions."[4]

On November 26, 2013, the Honorable Jonathan W. Feldman, United States Magistrate Judge, issued a Scheduling Order [#8], directing, *inter alia*, that all motions to amend pleadings be filed and served by April 14, 2014. Defendants never moved to amend the Answer or requested an extension of that deadline.

On July 24, 2014, Defendants filed a motion [#11] for judgment on the pleadings. Defendants asserted various grounds for relief, including statute of limitations and qualified

---

[4] *See*, 42 U.S.C.A. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

4

immunity, but did not address whether the alleged use of force was sufficient to state a constitutional claim. On September 12, 2014, Plaintiff filed his response [#16] to that motion. As part of that response, Plaintiff moved for leave to amend the Complaint, if necessary, to address any deficiencies in the pleading identified by Defendants' Motion for Judgment on the Pleadings. Defendants opposed that request. *See*, Defendants' Reply [#18] at ¶ p. 3, ¶ 10 ("The time for Plaintiff to amend his pleadings has expired and leave to amend the Complaint should be denied.").

On February 4, 2015, the Court issued a Decision and Order [#20] granting Defendants' motion in part, and dismissing all claims except the 8th Amendment excessive force claim against Geiger. As part of that Decision and Order, the Court denied Plaintiff's motion to amend the Complaint, stating:

> Plaintiff has not submitted a proposed amended pleading, as required by Local Rule of Civil Procedure 15(a) & (b). Nor, in light of [Magistrate] Judge Feldman's Scheduling Order [#8], has Plaintiff attempted to show " good cause" for the late application to amend. *See, e.g., Chart v. Town of Parma*, No. 10-CV-6179P, 2012 WL 3839241 at *2-3 (W.D.N.Y. Aug. 28, 2012) (denying a cross motion to amend, made in response to a motion to dismiss, and made after the court ordered deadline for amending pleadings, where the movant-plaintiff failed to show good cause as required under Rule 16). Accordingly, Plaintiff's request to amend is denied.

Decision and Order [#20] at p. 7.

Thereafter, between 2015 and 2017, the parties represented to the Court that they were engaging in discovery. In that regard, on May 28, 2015, the Court granted [#21] the parties' stipulated request to complete all discovery by July 29, 2015, and to file dispositive motions by October 27, 2015. Subsequently, the parties asked for, and received, nine (9) additional extensions of the deadlines for completing discovery and for filing dispositive

5

motions. (*See*, Scheduling Orders [#22-30]). Some of those extensions were requested by Plaintiff, and some were requested by Defendant, but all of the requests were made with the consent of the opposing party. Moreover, in connection with all such requests for extensions, counsel represented to the Court that discovery was ongoing. Neither party ever suggested that the other party was refusing to provide discovery, or was otherwise failing to prosecute the action.

During discovery in this action, Plaintiff testified at deposition about Geiger's actions inside the cell, as follows:

> [H]e continued yelling [outside the cell]. So I called him a name, I called him a cocksucker back. I went to my bunk to lay down, and he asked the other officer for the keys. He came into the cell. I'm kind of like sitting up in the bed, because he's coming in. He grabs me by the neck, pushes me down onto the bunk, screaming in my face, telling me like I don't know who you think you are, you need – I don't know, do as you're told, just profanities, calling me a faggot, piece of shit. And you know, I had figured he was done, out of steam, and then he told me to do whatever you can do to get out of here.

Docket No.[31-2] at p.28. Specifically regarding Geiger grabbing his neck, Plaintiff further testified as follows:

> Q. Can you describe the physical contact that he had with you?
> A. Choked me.
> Q. And how was he choking you?
> A. I don't know what you mean by that.
> Q. Was he grabbing you with one hand, two hands?
> A. With one hand.
> Q. Do you know what hand?
> A. I'm not even sure. It was just so long ago.
> Q. Do you know what he was doing with his other hand?

> A. Pointing it at me. Screaming.
>
> ***
>
> Q. I'm assuming that because you said he was choking you that he was grabbing your neck?
>
> A. Yes.
>
> Q. What part of your neck was he grabbing?
>
> A. Just the base, I guess. I don't know. In the middle of it.
>
> Q. How long did the physical contact last?
>
> A. It wasn't long. Maybe a minute at the most.
>
> ***
>
> Q. Did you lose consciousness?
>
> A. No.
>
> Q. Did you get any bruising as a result of the choking?
>
> A. There was marks, yes.
>
> Q. When you say marks, what kind of marks were they?
>
> A. Light bruising, just red, irritated.
>
> ***
>
> Q. What happened after he released you?
>
> A. He just left the cell. And I laid in bed and went to sleep.

Docket No. [#31-2] at pp. 28-31.

On July 17, 2017, Deputy Geiger filed the subject motion [#31] for summary judgment, on the following grounds: 1) Plaintiff has failed to prosecute this action; 2) Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a) before commencing this action; 3) Plaintiff has not shown that a constitutional violation occurred, even when viewing the facts in the light most-favorable to him; and 4) Geiger is entitled to qualified immunity. Concerning Plaintiff's alleged failure to prosecute this action, Geiger contends that Plaintiff disregarded an Order [#8] directing him to make Rule 26

7

disclosures, and never conducted depositions. With regard to Plaintiff's alleged failure to exhaust administrative remedies, Geiger contends that Plaintiff did not comply with the Complaint/Grievance procedures set forth in the Monroe County Jail's Inmate Handbook.[5] With regard to the legal sufficiency of Plaintiff's § 1983 claim, Geiger contends that verbal threats are insufficient to create a constitutional violation, and that the alleged injuries to Plaintiff's neck are *de minimis* and not actionable. As to this contention, Geiger has submitted photographs of Plaintiff taken two days after the incident, which, Plaintiff agrees, show no injuries to Plaintiff's neck.[6] Finally, Geiger maintains that even if he committed a constitutional violation,[7] he is entitled to qualified immunity because he would have had "no reason to believe that he was [acting] in violation of Plaintiff's constitutional rights[.]" In particular, Geiger asserts that, "Plaintiff alleges that Deputy Geiger placed his hand[ ] around Plaintiff's neck and held him down[, but] . . . if reasonable officers could disagree as to whether a particular amount of force is legal under certain circumstances, the officer is entitled to qualified immunity[, and here] . . . the incident lasted but for a few seconds and Plaintiff suffered no observable injury[.]"[8]

On August 31, 2017, Plaintiff filed a response [#33], opposing each aspect of Geiger's motion. With regard to the alleged failure to prosecute, Plaintiff responds that he did not disobey the Order [#8] to produce Rule 26 discovery materials, because he has no

---

[5] Without specifically stating so, Geiger's motion implies that § 1997e(a) affects the Court's jurisdiction. *See*, Def. Memo of lLaw [#31-7] at pp. 8-9. As discussed further below, § 1997e(a)'s exhaustion requirement is an affirmative defense, not a jurisdictional bar.

[6] *See*, Docket No. [#31-5], Comanzo Aff., Ex. B; see also, Docket No. [#33-2], Pl. Local Rule 56.2 Response, ¶ 26.

[7] Geiger denies that he ever touched Plaintiff during the incident. Docket No. [#31-3] at p. 3, ¶ ¶ 19, 24.

[8] Def. Memo of Law [#31-7] at p. 14.

such materials to provide. As for the alleged delays in the case, Plaintiff contends that both sides have been responsible for delays, and that prior to Defendant's summary judgment motion, Defendant's counsel never voiced any objection to the delays. Plaintiff maintains, therefore, that Defendant's attempt to now have the action dismissed for failure to prosecute actually violates the Court's Civility Principles, since Defendant's counsel never attempted to address the situation informally before filing the motion.

Plaintiff further contends that Defendant waived the § 1997e(a) affirmative defense by failing to include it in the Answer. Plaintiff maintains that, in any event, he exhausted his administrative remedies by utilizing the remedies that were available to him at the Monroe County Jail.[9] Plaintiff further states that the Jail obviously received notice of his complaint, since the complaint caused the Monroe County Sheriff's Office to conduct an internal affairs investigation into the incident.

Plaintiff further maintains that Geiger choked him and interfered with his breathing, which is sufficient both to establish a constitutional violation and to prevent Geiger from obtaining qualified immunity.[10] On this point, Plaintiff states, in pertinent part:

> Deputy Geiger then entered my cell while he continued to scream and swear and grabbed me by the throat and squeezed interfering with my ability to breathe. He was calling me names including "a nothing" "a piece of shit" and "a faggot." He then threatened me by saying "You better do something to get off this floor by tomorrow" and left my cell. I was never aggressive or threatening to Deputy Geiger in any way and I did not resist him in any way.

---

[9]See, Trelly Aff. at ¶ 10 (" I initiated a complaint about the incident to the day shift deputy the next day and I wrote out a complaint on the Jail's correspondence form. No one responded the next day so I asked again. I then 'mailed' my complaint even though I was told it would 'just sit there.' On the second day they took the pictures [of my neck], took me to a nurse, [and] had a lieutenant interview me about the incident. . . . I gave the lieutenant a statement which he appeared to write down. I don't recall signing it or ever seeing it after that. To this date I have never been officially notified of the results, if any, of my complaint.").

[10]Plaintiff contends that Geiger's actions violated both the Monroe County Sheriff's own regulations and New York Penal Law § 121.11, "Criminal obstruction of breathing or blood circulation."

I just laid in my bed the whole time.[11]

Plaintiff reiterates that as a result of the incident, he had "red marks and light bruising on [his] neck where Deputy Geiger choked [him] that faded away after about a day," but did not seek medical treatment. Plaintiff further argues that

> [t]he wanton and unnecessary physical attack on the Plaintiff cannot be considered *de minimis* because the Defendant clearly obtained the keys from another deputy and entered the Plaintiff's cell to administer cruel pain upon the Plaintiff at a time when the Plaintiff was not posing a physical threat to any person or property; was not creating a disorderly situation in the jail that required physical intervention, or physically resisting lawful confinement or movement within the facility. He was only laying on his bed and had called the Defendant a profane name. The Defendant's actions were clearly meant to administer his own brand of physical punishment motivated only by his own anger without any pretense of authority. The fading of the red marks and bruises and the lack of lasting physical injury do not preclude the Plaintiff's claim as a matter of law. It would be unconscionable to conclude that such criminal violence is not worthy of consideration in a constitutional context.

Pl. Memo of Law [#33-6] at pp. 10-11.

On September 21, 2017, Geiger filed a reply [#34] that repeats the points in his initial memorandum of law [#31-7]. Additionally, Geiger requests leave to amend his Answer, to assert the affirmative defense of failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a).

On January 18, 2018, counsel for the parties appeared before the undersigned for oral argument. Following oral argument, the Court provided the parties an opportunity to supplement their submissions concerning whether Geiger's alleged use of force is

---

[11]Trelly Aff. at ¶ 5.

sufficient to establish a constitutional violation.[12]  The Court has thoroughly reviewed and considered the parties' submissions.

DISCUSSION

*Rule 56*

Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.

---

[12]On January 22, 2018, the Court's Law Clerk emailed counsel and invited them to submit additional case authority on this point by the end of the day on January 23, 2018.  Plaintiff's counsel submitted  a supplemental letter brief, while Defendants's counsel chose to rely on her prior submissions.

The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

### Failure to Prosecute

Geiger has moved to dismiss this action pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, which states: "If the Plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."

Geiger contends both that Plaintiff failed to obey the Court's Order [#8] directing the production of Rule 26 materials by January 13, 2014, and that Plaintiff failed to take depositions after obtaining extensions of time in which to conduct them.

Geiger's arguments lack merit. To begin with, Geiger fails to allege the existence of any Rule 26 materials that Plaintiff failed to produce, and, in any event, Geiger's proper remedy would have been to bring a motion to compel or to preclude. In that regard, the Order [#8] which Geiger maintains was disobeyed by Plaintiff contains the following language: "All motions to compel discovery shall be filed at least thirty (30) days prior to the factual discovery cutoff." (emphasis added). Geiger never filed such a motion or otherwise alerted the Court (or Plaintiff's counsel) to this alleged failure to produce discovery, but instead, waited three years to make the subject request under Rule 41(b).

Further, with regard to the alleged delays in the case, Geiger has focused on delays attributable to Plaintiff's expressed desire to take depositions, while ignoring the fact that

he (or his attorneys) also requested several extensions of the discovery deadlines for various reasons having nothing to do with Plaintiff. *See, e.g.*, Docket Nos. [#24][#25][#26]. In any event, Geiger consented to all such extensions, and Plaintiff's eventual choice not to take depositions is a strategic decision that did not violate any order of the Court.

The request to dismiss the action for failure to prosecute is denied.

<u>Failure to Exhaust Administrative Remedies</u>

Geiger next maintains that dismissal is required pursuant to 42 U.S.C. § 1997e(a). That provision clearly applies to Plaintiff, because he is suing under federal law, complaining about jail conditions that he experienced while he was an inmate. However, it is also clear that this statutory exhaustion rule is not a jurisdictional bar, but is an affirmative defense which can be waived if it is not pleaded. *See, Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004) (Failure to exhaust as required by § 1997e(a) is an affirmative defense that can be waived.); *see also, Handberry v. Thompson*, 446 F.3d 335, 342-343 (2d Cir. 2006) (Defendants waived PLRA exhaustion defense by waiting three years to assert it, after previously indicating that the inmate did not need to exhaust). Generally, such a waiver occurs when a defendant fails to plead the affirmative defense in his answer. *See, e.g., Howard v. City of New York*, No. 02-CV-1731 (KMK), 2006 WL 2597857, at *6 (S.D.N.Y. Sept. 6, 2006) (Stating, in context of considering whether the PLRA exhaustion defense had been waived, that "When an affirmative defense is not raised in an answer, as required by Rule 8(c) of the Federal Rules of Civil Procedure, it is waived.") (citation omitted).

Of course, even if a defendant does not assert an affirmative defense in his answer, he may later request permission to amend the answer to assert the defense, such as

13

Geiger has done here. However, in a case with facts similar to those presented here, a district court denied leave to amend, stating:

> Although defendant raised several affirmative defenses in his answer filed on September 17, 2001, he did not plead that plaintiff had failed to exhaust his administrative remedies as presently required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). . . . Over the next two years, the parties engaged in discovery[.] . . . In October 2004, defendant moved for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies. . . . In his opposition, plaintiff claims, *inter alia*, that defendant waived the affirmative defense by failing to raise it sooner. Now, in his reply papers . . . defendant seeks leave to amend his answer to include the affirmative defense of failure to exhaust administrative remedies.
>
> Although defendant has not filed a motion to amend, the Court has the discretion to treat defendant's motion for summary judgment as a motion to amend his answer to plead the affirmative defense of failure to exhaust. . . . Motions to amend pleadings are governed by Fed.R.Civ.P. 15(a), which states that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Accordingly, leave to amend is generally granted unless the amendment: (1) has been unduly delayed; (2) is sought for dilatory purposes or is made in bad faith; (3) would cause undue prejudice to the opposing party; or (4) would be futile.
>
> Although [defendant could have raised the PLRA exhaustion defense as early as ] February 2002, [he] did not seek leave to amend his answer to add the affirmative defense until October 2004. Moreover, defendant never filed a motion to amend, but rather moved for summary judgment on the basis of an affirmative defense that he did not plead in his answer. Only upon receiving plaintiff's opposition papers did defendant seek leave to amend in his reply papers. Although defendant has not provided any justification for [this delay], delay unaccompanied by undue prejudice or bad faith does not usually warrant denial of leave to amend.
>
> When determining whether the opposing party would suffer undue prejudice, courts consider whether leave to amend would: (1) require the opponent to expend significant additional resources to conduct discovery and prepare for

> trial; (2) significantly delay the resolution of the dispute; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction.
>
> \*\*\*
>
> I find that granting the amendment would be prejudicial to plaintiff. If defendant were permitted to amend his answer at this late stage of the proceedings, plaintiff would be forced to expend additional resources and resolution of the action, now pending more than three (3) years, would be delayed, and . . . further discovery and additional depositions would be needed to determine whether the admitted failure to exhaust should nevertheless be excused. *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir.2004) (noting that "special circumstances" may excuse a prisoner's failure to exhaust). Thus, plaintiff would have [to] expend[ ] additional resources on motion practice and discovery and resolution of the action would [be] further delayed. Accordingly, defendant's motion to amend is denied and the affirmative defense is deemed waived.

*Bonilla v. Janovick*, No. 01-CV-3988 SJF ETB, 2005 WL 61505, at \*1–2 (E.D.N.Y. Jan. 7, 2005) (citations and internal quotation marks omitted).

Here, the Court similarly finds that Geiger's request to amend should be denied. First and foremost, the deadline for amending pleadings was April 14, 2014, more than three years before Geiger filed the subject motion for summary judgment. Geiger has not offered any good cause for failing to comply with that deadline, and the motion to amend may therefore be denied for that reason alone.[13] Indeed, as noted earlier, the Court previously denied Plaintiff's motion to amend his Complaint for the same reason. *See*, Decision and Order [#20] at p. 7. Moreover, the case would be delayed and Plaintiff would be prejudiced if Geiger were permitted to raise this affirmative defense for the first time after discovery has been completed. Accordingly, Geiger's request to amend is denied,

---

[13]*See*, Scheduling Order [#8] at p. 3 ("No extension of the above cutoff dates will be granted except upon written application, made <u>prior to the cutoff date</u>, showing good cause for the extension.") (emphasis in original); *see also*, Def. Reply Affirmation of Attorney Rulison ("Counsel drafting this motion was not the same Counsel to file the Answer and therefore cannot state why failure to exhaust was not pled.").

15

the affirmative defense under § 1997e(a) is deemed waived, and the portion of Geiger's summary judgment motion that is based on that affirmative defense is denied.

Whether Geiger's Use of Force Amounts to a Constitutional Violation

Geiger contends that even assuming that he yelled at Plaintiff and grabbed his throat in the manner alleged, such facts are insufficient to state an 8th Amendment violation. The Court understands Geiger to argue that Plaintiff cannot satisfy the objective component of an 8th Amendment excessive force violation. The applicable legal principles are clear:

> The Eighth Amendment prohibits the infliction of cruel and unusual punishments, including the unnecessary and wanton infliction of pain. When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being.
>
> To establish a constitutional violation under the Eighth Amendment, an inmate must meet both an objective and a subjective requirement. To meet the objective requirement, the alleged violation must be sufficiently serious by objective standards. The objective component is context specific, turning upon contemporary standards of decency. To meet the subjective requirement, the inmate must show that the prison officials involved had a wanton state of mind when they were engaging in the alleged misconduct.
>
> However, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se* whether or not significant injury is evident. This result follows because when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. Nevertheless, a *de minimis* use of force will rarely suffice to state a constitutional claim. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

*Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (citations and internal quotation marks

omitted). "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38, 130 S. Ct. 1175, 1178, 175 L. Ed. 2d 995 (2010) (citation omitted).

The foregoing principles establish that even if a corrections officer subjectively acts with a malicious or sadistic purpose, no constitutional violation occurs if the use of force is nevertheless *de minimis*. Otherwise, the quoted language above from *Griffin v. Crippen* beginning with "Nevertheless . . ." would be meaningless. *See also, Cole v. Fischer*, 379 Fed.Appx. 40, 42 (2d Cir. May 27, 2010) ("The malicious use of force to cause harm constitutes a *per se* Eighth Amendment violation regardless of whether there is a significant injury. <u>However</u>, the prohibition against cruel and unusual punishment <u>does not extend to the *de minimis* use of force</u>, provided that such force is not of a sort repugnant to the conscience of mankind.") (*quoting Baskerville v. Mulvaney*, 411 F.3d 45, 48 (2d Cir.2005), emphasis added, citations and internal quotation marks omitted); *see also, Wilkins v. Gaddy*, 130 S.Ct. at 1178 ("Not every *malevolent* touch by a prison guard gives rise to a federal cause of action.") (emphasis added, citation and internal quotation marks omitted). The only exception to this would be where the use of force, while *de minimis*, is nevertheless of the sort that is repugnant to the conscience of mankind. *Id.* Indeed, in *Baskerville v. Mulvaney*, the Second Circuit rejected the argument that a malicious use of force constitutes a *per se* 8th Amendment violation even where the force used was *de minimis* and not otherwise repugnant to the conscience of mankind. *Id.*, 411 F.3d at 48.

In the instant case, there may well be issues of fact as to Geiger's subjective

intent.[14] However, for purposes of the instant motion, there are no triable issues of fact with regard to the amount and type of force that Geiger used: Geiger grabbed Plaintiff's throat with one hand and pushed him back on his bunk, causing Plaintiff to have momentary difficulty breaching.[15] Geiger did not actually prevent Plaintiff from breathing, nor did he slap, punch or kick Plaintiff. The whole incident lasted a minute or less, and immediately thereafter Plaintiff went back to sleep. Plaintiff sustained faint redness/bruising to his throat that disappeared after a day, and did not seek medical attention.[16]

The Court finds as a matter of law that such force was *de minimis* and not repugnant to the conscience of mankind. It is difficult to find other court decisions with almost identical facts, since the force used here was so limited, both with respect to amount and duration. However, even in the 4th Amendment excessive force context, which requires a lesser showing to establish a constitutional violation than under the 8th Amendment,[17]

---

[14]Plaintiff admits that he provoked Geiger, initially by failing to comply with Geiger's order to uncover his light, and then by calling Geiger a cocksucker. Plaintiff further admits that while Geiger was holding him down, Geiger was yelling that Plaintiff needed to show respect to corrections officers and obey the jail's rules. On the other hand, Plaintiff was locked in his cell and posed no threat of physical harm to anyone.

[15]According to Plaintiff, Geiger held him in that position only long enough to yell a handful of obscenities at him, which would not have taken long. *See*, Docket No. [#31-2] at p. 17(Transcript p. 20) ("He was like, "You need to get some respect. I don't know who the fuck you think you are." He said, "You're nothing," and then grabbed me by the neck as I'm lying down, pushes me down until it hits my face and continued screaming. . . . [He was yelling and screaming that] I need to learn my place and so as I'm told and that I'm a piece of shit, a faggot and – I don't know. I guess he was expecting something more out of me, but I just laid there, so he kind of gave up.").

[16]The Supreme Court has explained that district courts must "decide excessive force claims based on the nature of the force rather than the extent of the injury," though "[t]he extent of injury may . . . provide some indication of the amount of force applied" and the purpose for which the force was used. *Wilkins v. Gaddy*, 130 S.Ct. at 1178 (*citing Hudson*).

[17]*See, e.g., D'Attore v. New York City Dep't of Correction*, No. 10 CIV. 815 JSR MHD, 2012 WL 4493977, at \*13 (S.D.N.Y. Sept. 27, 2012) ("In assessing a force claim, context is, of course, crucial. It is thus essential for the court to avoid conflating Eighth Amendment excessive-force analyses appropriate to the prison context with Fourth Amendment excessive-force claims applicable in non-prison contexts. Generally, the standard for assessing uses of force is somewhat more lenient when the force is applied to a prisoner rather than a free member of the public.") (citation omitted), report and recommendation adopted, No. 10 CIV. 815 JSR, 2012 WL 5951317 (S.D.N.Y. Nov. 28, 2012); *see also, Jackson on Behalf of Z.J. v. City of Middletown*, No. 3:11-CV-00725 (JAM), 2017 WL 2218304, at \*4 (D. Conn. May 19, 2017) ("[T]he governing standard under the Eighth Amendment is even less protective of a plaintiff than the standard under the Fourth Amendment.") (citations and internal quotation marks omitted).

Judge D'Agostino in the Northern District recently granted summary judgment for a police officer who, while attempting to get an arrestee to identify himself, "tightly gripped" the arrestee's throat while threatening to strike him with a police radio if he did not answer. *See, Konovalchuk v. Cerminaro*, No. 9:11-CV-01344 MAD, 2014 WL 272428, at *16 (N.D.N.Y. Jan. 24, 2014) ("*Konovalchuk*") ("Konovalchuk contends that Carroll subjected him to excessive force by gripping his neck while threatening him verbally and with a heavy police radio. First, verbal abuse on its own does not rise to the level of a constitutional violation. Second, merely gripping the neck is considered *de minimis* use of force that does not amount to a Fourth Amendment violation.") (citation and internal quotation mark omitted); *see also, id.* at *24 ("[H]aving his neck tightly gripped constitutes *de minimis* use of force[.]").

Similarly, in the 8th Amendment prisoner context, Judge Curtin granted summary judgment for a corrections officer who choked and slapped an inmate for "giving him the evil eye," finding that the use of force was *de minimis*. *See, Felder v. Diebel*, No. 10-CV-343 JTC, 2012 WL 6690239, at *5 (W.D.N.Y. Dec. 21, 2012) ("*Felder*") ("Plaintiff maintains that CO Diebel grabbed him by the throat and slapped him twice. The medical report completed after the incident noted an absence of visible injuries, with no redness or scratches. . . . Although the court must view the facts in the light most favorable to the plaintiff, plaintiff has not met his burden of showing specific facts that would raise a genuine issue for trial. . . . While plaintiff testified that he "saw stars" and was "woozy" following the alleged assault, there is no indication that he sought medical treatment until two days later. Plaintiff's medical records from July 20, 2009 indicate no signs of injuries consistent with his allegations and no medical treatment. Accordingly, the court finds that

the amount of force used in this case was *de minimis*.").

The facts of the instant case are less egregious than those of either *Konovalchuk* or *Felder*, both with regard to the amount of force used and the circumstances under which the alleged assaults took place. Accordingly, the Court finds that the force allegedly used by Geiger is, from a Constitutional standpoint, *de minimis* and not repugnant to the conscience of mankind. Geiger is therefore entitled to summary judgment on Plaintiff's 8th Amendment claim under Section 1983, which was the only remaining claim in this action.

## CONCLUSION

Defendant's motion for summary judgment [#31] is granted and this action is dismissed. The Clerk of the Court is directed to close this action.

SO ORDERED.

Dated: Rochester, New York
January 26, 2018

ENTER:


 /s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge